Theodore MERCER, Petitioner,

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**Appeal No. 85–1008.**

United States Court of Appeals,
Federal Circuit.

Aug. 30, 1985.

Peter B. Broida, Passman & Broida, Washington, D.C., argued for petitioner.

Stuart James, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan.

Charlotte Hardnett, Dept. of Health and Human Services, Philadelphia, Pa., of counsel.

Before BALDWIN, NEWMAN and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Theodore Mercer appeals from the final order of the Merit Systems Protection Board (MSPB or Board), 24 M.S.P.R. 368, sustaining his removal from the position of a claims services clerk, GS–3, with the Department of Health and Human Services, Social Security Administration (agency). We reverse-in-part, vacate-in-part, and remand.

## BACKGROUND

On November 20, 1981, the agency proposed to suspend Mercer for two reasons: sleeping at his desk and, on occasion, becoming loud and disruptive when his supervisor awakened him. One week later another incident occurred. On November 27, 1981, while Mercer was discussing his proposed suspension with his supervisor, he verbally threatened her. As a result of this threat the agency issued Mercer a letter on December 7, 1981, placing him on enforced leave pending the outcome of a psychiatric fitness-for-duty examination. The examination was conducted on January 18, 1982, and some three weeks later, on February 11, 1982, the agency's medical director received the psychiatrist's report which concluded that Mercer was fit for duty and was ready, able and willing to work and that there had been no change in Mercer's behavior from the time of the alleged threat to the time of examination. In turn, by memorandum, dated February 18, 1982, the medical director sent his comments on the psychiatrist's report to the agency's personnel counselor. Mercer was returned to duty on March 1, 1982, and on March 5, 1982, the agency proposed his removal and Mercer was removed on April 30, 1982, for the verbal threat to his supervisor and the prior proposed charges of sleeping on the job.

In its notice of proposed removal, the agency denied Mercer a predecision hearing and a predecision advisory arbitration "because of circumstances which are such that keeping you on active duty may result in damage to Government property or may be injurious to you or your fellow workers."

Mercer filed an appeal with the MSPB and raised two defenses: first, that he was improperly placed on enforced leave, and therefore, constructively suspended and, second, that he was improperly denied a predecision or advisory arbitration hearing which constituted harmful procedural error. As to these defenses, the presiding official found that (a) the MSPB was without jurisdiction to review the enforced leave action, because the enforced leave did not constitute an appealable suspension since it was not disciplinary in nature, and (b) the denial of a predecision hearing was not a harmful error. The presiding official, finding that the evidence supported the charges, determined that the penalty of removal was appropriate.

The Board, in denying Mercer's petition for review, found that the presiding official had correctly affirmed the removal action. The Board also found that although Mercer had been improperly placed on enforced leave between February 19, 1982 and March 1, 1982, because the period of suspension was not more than fourteen days, it was without jurisdiction to review that action.

## II

## ISSUES

1) Did the MSPB have jurisdiction to hear Mercer's suspension appeal?

2) Did the denial of a predecision hearing, required by agency regulation, constitute harmful procedural error?

## III

## BOARD JURISDICTION

Under the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1134 (the Act), a federal employee may appeal to the MSPB adverse actions including, *inter alia*, suspensions for more than fourteen days. 5 U.S.C. §§ 7512(2), 7513(a), (d), 7701(a) (1982). The Act defines "suspension" as "the placing of an employee, for disciplinary reasons, in a temporary status without duties or pay." 5 U.S.C. § 7501(2); *see* 5 U.S.C. § 7511(a)(2) (1982).

■ The agency's decision on December 7, 1981, to place Mercer on enforced leave (which lasted more than fourteen days until March 1, 1982) constituted an appealable "suspension" over which the MSPB had jurisdiction. As this court stated in *Thomas v. General Services Administration*, 756 F.2d 86, 89 (Fed.Cir.1985):

Such suspensions—which are ordered because the agency believes that the employee's retention on active duty could ... be injurious to the employee, his fellow workers, or the public—are "disciplinary" in the broader sense of maintaining the orderly working of the Government against possible disruption by the suspended employee (pending the determination of that employee's disability retirement).

■ Having determined that the Board had jurisdiction we, nevertheless, need not remand for a determination whether the suspension was proper. The findings and conclusions of the presiding official that "the agency had an obligation to send appellant for a psychiatric fitness-for-duty examination" and that "appellant's conduct and medical condition gave the agency a

reasonable belief that he presented a threat to his fellow employees" are supported by substantial evidence on the record as a whole and, therefore, remain undisturbed. 5 U.S.C. § 7703(c) (1982). Accordingly, Mercer's non-duty status from December 7, 1981, to February 11, 1982 (the date the Board found that the agency received notice that Mercer was able to work), constituted a proper suspension.

■ As to the remaining period of enforced leave, the Board found that any delay from February 11, 1982, to February 19, 1982, was proper being attributable to the normal administrative process and that the delay thereafter constituted improper enforced leave. We hold that once an agency learns that its beliefs are unfounded, *i.e.*, that the employee is fit for duty, the employee must be restored immediately to "active duty status." *See* 5 C.F.R. § 831.1206; *cf. Eugene P. Hall v. U.S. Postal Service*, 11 MSPB 348, 13 M.S.P.R. 69 (1982) (after acquittal of employee suspended on reasonable belief he had committed a crime, agency ordered to terminate suspension as of the date the agency was notified of the acquittal). Accordingly, Mercer's non-duty, non-pay status from February 11, 1982, until March 1, 1982, constituted an improper suspension.

## IV

## PREDECISION HEARING

■ 5 U.S.C. § 7513(c) states that an "agency may provide, by regulation, for a hearing which may be in lieu of or in addition to the opportunity to answer provided under subsection (b)(2) of this section." The agency, by regulation, adopted a procedure that provided one of two interim administrative appeal steps: a predecision hearing or advisory arbitration in addition to the basic statutory rights of an oral or written reply. HHS Personnel Reg. 752–1–20B,6 (1974).

The MSPB found that although the agency erred under its regulations in denying Mercer a predecision hearing, Mercer failed to show that this error harmed him. 5

U.S.C. § 7701(c)(2) provides that the agency's decision may not be sustained if the employee shows harmful error in the application of the agency's procedures in arriving at such decision. The term "harmful error" is defined by 5 C.F.R. § 1201.56(c)(3) to mean error by the agency in the application of its procedures which, in the absence of cure of the error, might have caused the agency to reach a different conclusion than the one reached. "Thus, in an appeal of an agency disciplinary decision to the Board, the agency's failure to follow ... procedures may result in its action's being overturned, but only if the failure might have affected the result of the agency's decision to take disciplinary action against the individual employee." *Cornelius v. Nutt,* — U.S. ——, 105 S.Ct. 2882, 2889, 86 L.Ed.2d 515 (1985). "An employee who ... appeal[s] an agency disciplinary decision to the Board must prove that any procedural errors substantially prejudiced his rights by possibly affecting the agency's decision." *Id.* at 2890.

In the initial decision, affirmed by the Board on this point, the presiding official stated: "Nonetheless, having identified a procedural error, it is still the appellant's burden to show how that error was harmful and how it *would have* affected the outcome of the agency's decision." [Emphasis added.]

While the burden is on Mercer to show that the failure to grant him the predecision hearing was harmful to his defense so that a different result *might have* been reached, the burden is not on him to prove that the outcome of such a hearing *would have* changed the result, an impossibility. He only needed to show that it was an error which *could have* changed the result.

■ Where the agency has adopted a procedure that provides for a predecision hearing the denial of a predecision hearing is clear error. As was stated in *Cleveland Board of Education v. Loudermill,* — U.S. ——, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985), "[e]ven where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect."

We do not deem the procedural error in Mercer's case to raise the constitutional issue on which the decision in *Loudermill* turned. The March 5, 1982, notice of proposed removal provided Mercer with detailed reasons for the adverse action and stated that "[y]ou have the right to answer this proposal orally and in writing and to submit affidavits and other documentary evidence in support of your answer." An oral response was made in his behalf, prior to termination, by Cynthia Ennis, AFGE Local 1923, at which time the union representative advised that no additional evidence would be provided. Mercer does not argue that constitutional due process was not satisfied.

While the agency was not constitutionally required to provide Mercer with an additional predecision procedure, it had done so. Regulation HHS 752-1-20B,6 gave its employees the right to either a predecision agency hearing or predecision advisory arbitration, with certain exceptions. The Board held that the agency had wrongfully deprived Mercer of this right, but that this error was harmless.

■ However, even in the circumstance of such a serious procedural error as the denial of a predecision hearing, a federal employee must prove that his rights were substantially prejudiced by the procedural error so that the outcome was possibly thereby affected. In this case, Mercer introduced undisputed evidence at the hearing that the official who proposed his initial thirty-five day suspension advised him that he would be allowed to return to his position after the suspension, if he were found fit for duty. Due to an agency organizational change occurring during Mercer's suspension period, a new official became the proposing official and issued the notice cancelling the proposed suspension and proposing Mercer's removal. This evidence of differing views within the agency as to the penalty to be imposed upon Mercer clearly demonstrates that, had Mercer been afforded a predecision hearing or an advisory arbitration, the outcome *could* have

been different. Mercer was afforded neither benefit.

Although the government argues that Mercer's exercise of his right to an oral reply before the presiding official rendered harmless the denial of the additional predecision rights, we cannot agree. A person has a better and perhaps dispositive chance of successfully contesting termination of benefits before, not after, the benefits are terminated. *See Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970).

For these reasons, we reverse that part of the MSPB's decision holding that Mercer failed to show the procedural error harmed him.

## V

## CONCLUSION

As to the improper suspension, we remand to the Board so that the agency can be ordered to amend its records and to place Mercer in a duty and pay status from February 11, 1982, until March 1, 1982, the date of his actual return to duty. As to the merits of his removal, Mercer having proved harmful procedural error, we vacate and remand for proceedings consistent herewith.

REVERSED–IN–PART, VACATED–IN–PART, AND REMANDED.