Frederick W. **MONCRIEF**, Plaintiff,

v.

**OFFICE OF PERSONNEL MANAGEMENT, et al., Defendants.**

**Civ. A. No. 83–2992.**

United States District Court, District of Columbia.

Oct. 28, 1985.

Joel P. Bennett, P.C., Washington, D.C., for plaintiff.

Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, Patricia J. Kenney and Rebecca L. Ross, Asst. U.S. Attys., Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

In this proceeding, Frederick Moncrief, a Department of Labor trial attorney, challenges the evaluation and disposition of his application to become an Administrative Law Judge ("ALJ"). He seeks declaratory and injunctive relief against the Office of Personnel Management ("OPM") for alleged violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, and his Fifth Amendment rights to due process of law. Before the Court are the plaintiff's motion for summary judgment and the defendant's motion to dismiss or, in the alternative, for summary judgment. The motions have been fully briefed and argued. For the reasons outlined below, the Court must deny the plaintiff's motion and grant the defendant's motion to dismiss on the basis of lack of subject matter jurisdiction.

## BACKGROUND

In July 1981, Moncrief applied to the Office of Administrative Law Judges ("OALJ"), a division of OPM, for a position as an ALJ at both the GS–15 and GS–16 levels. In March 1982, he was notified that he had not achieved qualifying scores for either position. He appealed the OALJ determination and received a decision from the Rating Appeals Board on August 23, 1983. The Board awarded an additional five points on the application, allowing Moncrief to qualify at the GS–15 level, but still leaving him with a failing score for GS–16 positions.[1] Moncrief then filed this lawsuit.

The ALJ application scoring process has two parts. Applicants are first evaluated as to the quality of their legal experience based on the nature and complexity of their cases and the courts or agencies before which they practice. An applicant may receive up to sixty points for this part of the application. In the second part of the process, the OALJ evaluates the applicant's personal references. Questionnaires are sent to individuals named on the application as references. Based on the responses to the questionnaires, called vouchers, an applicant may receive up to forty points.

Moncrief challenges both parts of the scoring of his application. He objects to his quality of experience score, arguing that the rating was based purely on his GS classification in violation of the Court of Appeals' ruling in *Etelson v. Office of Personnel Management,* 684 F.2d 918 (D.C. Cir.1982).[2] He also disputes the evaluation of his personal references, criticizing the seeming arbitrariness in the judging of the vouchers and raising questions about the mathematical soundness of the procedure used and the score he was awarded.

Moncrief's claims are not frivolous, and they raise concerns about the fairness of the ALJ application process and OPM's compliance with an unequivocal court ruling relating to that process. Nonetheless, this Court is precluded from addressing the merits of the suit because, as the government contends, the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111, deprives it of subject matter jurisdiction.

## ANALYSIS

In *Carducci v. Regan,* 714 F.2d 171 (D.C. Cir.1983), our circuit court held that, because of the enactment of the CSRA, agency personnel actions formerly reviewable under the APA are now reviewable only in very limited circumstances and under a very narrow standard. The court per-

---

1. After the administrative appeal ruling on his written application, Moncrief continued the ALJ application process which includes a personal interview and a day-long written examination. Moncrief's scores did not change as a result of this final stage of the process. A final decision on his application was made on November 10, 1983.

2. In *Etelson,* the court held that the assigning of quality of experience points to the ALJ applications of government attorneys based solely on their grade classification was arbitrary and capricious. 684 F.2d at 927.

ceived in the provisions of the CSRA a scheme defining three levels of agency actions and corresponding levels of appropriate judicial oversight:

> (1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel, with judicial scrutiny "limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry"; and (3) for the specified minor personnel actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts.

*Carducci,* 714 F.2d at 175 (*quoting Cutts v. Fowler,* 692 F.2d 138, 140 (D.C.Cir. 1982)).[3]

The government contends that Moncrief's allegations fall squarely within the second or third categories of complaints and that, therefore, his case cannot be considered in a federal court. It argues that Moncrief's challenge amounts to an allegation of a "prohibited personnel practice" under the CSRA, and, as such, can only be pursued through a petition to the Office of the Special Counsel ("OSC"), with limited judicial review thereafter. Moncrief's position is that the CSRA does not apply to his complaint. He contends that the OSC has no jurisdiction over allegations such as his because the adverse decision of the OALJ is not a "personnel action" as defined in the OSC's regulations. He also argues

that his action presents a valid constitutional claim.

### A.

The OSC is charged with investigating "prohibited personnel practices." 5 U.S.C. § 1206(a)(1) (1982). The government argues that Moncrief's allegations meet the statutory definition of such practices since they charge OALJ with discrimination against government attorneys and with acting arbitrarily and unfairly in its hiring procedures.[4] On the basis of the statutory language and *Carducci,* government counsel argues that Moncrief must present his claim to the OSC rather than this Court.

Moncrief counters that the challenged action by OPM is not even a personnel action under the OSC's own regulations. Tracking the statutory definition, 5 U.S.C. § 2302(a)(2), OSC's regulations define a personnel action, *inter alia,* as "an appointment." 5 C.F.R. § 1250.3(a) (1985). Moncrief contends that since individual agencies rather than OPM hire ALJs, OALJ's actions cannot be deemed an appointment. He also seeks to distinguish *Carducci* and other cases interpreting the CSRA by emphasizing that he is not objecting to any action taken by his current employer.

It is true that most of the cases interpreting the CSRA involve employee-employer disputes. *See, e.g., Barnhart v. Devine,* 771 F.2d 1515, 1517 (D.C.Cir.1985) (National Weather Service employees' grievance over classification of their jobs); *Veit v. Heckler,* 746 F.2d 508 (9th Cir.1984) (challenge to Social Security Administra-

---

**3.** "Adverse actions" usually involve suspension or termination from employment or reduction in grade or pay. *See, e.g.,* 5 U.S.C. § 7512 (1982). "Prohibited personnel practices" include, for example, discrimination on the basis of race, age, or sex, actions against "whistleblowers," or coercion of political activity. *See* 5 U.S.C. § 2302(b) (1982).

**4.** Among the prohibited personnel practices are "discriminat[ing] for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant," 5

U.S.C. § 2302(b)(10), (1982), or "violating any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301...." 5 U.S.C. § 21302(b)(11) (1982). The merit system principles include the following: "[S]election and advancement should be determined solely on the basis of relative ability, knowledge, and skills, and fair and open competition which assures that all receive equal opportunity." 5 U.S.C. § 2301(b)(1) (1982). "Employees should be protected from arbitrary action...." 5 U.S.C. § 2301(b)(8) (1982).

tion's application of its performance appraisal system); *Williams v. I.R.S.*, 745 F.2d 702 (D.C.Cir.1984) (disciplinary suspension of IRS attorney); *Carducci*, 714 F.2d 171 (reassignment of Customs Service employee because of "poor performance"); *Borrell v. U.S. Intern. Communications Agency*, 682 F.2d 981 (D.C.Cir.1982) (discharge of USICA probationary employee because of "whistle-blowing"). Although Moncrief happens to serve currently as a federal attorney, his complaint does not relate to actions connected to that employment, but to a job he has not yet obtained. In support of his argument that this distinguishes his case from the growing line of cases denying jurisdiction to hear personnel disputes involving federal agencies, he cites *Etelson*, 684 F.2d 918, and *Dugan v. Ramsay*, 727 F.2d 192 (1st Cir.1984). The plaintiffs in both cases, like Moncrief, were applicants for an ALJ position, and in both, the CSRA did not preclude judicial review of OPM's decisions. But in *Grey v. Office of Personnel Management*, 771 F.2d 1504 (D.C.Cir.1985), the Court of Appeals for this circuit dismissed the precedential significance of both *Etelson* and *Dugan* for purposes of analyzing the effect of the CSRA. Etelson's case arose in 1970, long before the CSRA was enacted. *Id.* at 1509. As for *Dugan*, the circuit court stated:

> In *Dugan*, the First Circuit held that despite the passage of the CSRA, APA review remained available to an applicant for an ALJ position, a conclusion clearly contrary to *Carducci*. Appellants would have us follow *Dugan*. This, of course, we cannot do. *Carducci* is binding precedent which can be overruled only by the court *en banc*.

*Id.* at 1510. This is a clear and unambiguous statement that claims such as Moncrief's fall within the scope of the CSRA and thus cannot be heard in this Court.

Moncrief's argument that no personnel action is involved here since OPM does not have the power of appointment is not convincing. The definition of "personnel action" in the CSRA relates to "an employee in, *or applicant for,* a covered position in an agency." 5 U.S.C. § 2302(a) (emphasis added). Congress could have specifically provided for district court jurisdiction over ALJ hiring disputes if it had wanted to. *Cf.* 5 U.S.C. § 7702 (*de novo* review available in district courts for actions alleging unlawful discrimination in federal employment). To carve out a narrow exception to CSRA coverage in this case would be to swim against the clear tide of our circuit court's interpretation of the act most recently enunciated in *Barnhart* and *Gray*. Furthermore, such a conclusion would bring about a variation of the "extravagant result" that the court in *Carducci* set out to avoid: There is no logical reason that the evaluation of certain applications for government employment should come under more immediate and searching judicial review than the adverse actions or prohibited personnel practices specifically covered in the statute. *Cf. Carducci*, 714 F.2d at 174–75.

The procedures by which the OALJ evaluates applications for ALJ positions are rules that concern the merit system principle that "selection and advancement should be determined solely on the basis of of relative ability, knowledge, and skill, after fair and open competition which assures that all receive equal opportunity." 5 U.S.C. § 2301(b)(1) (1982). Moncrief's complaint, in essence, alleges that OPM has violated that principle and therefore engaged in a "prohibited personnel practice." The proper avenue for pursuing relief for that violation is a petition to the OSC which is charged with investigating such charges and, if necessary, bringing complaints before the Merit System Protection Board ("MSPB"). *See* 5 U.S.C. § 1206 (1982). OPM, like any other agency, is subject to the adjudicatory power of the MSPB. *See Barnhard v. Devine*, 771 F.2d at 1522–23. Since plaintiff has not petitioned the OSC, this Court has no jurisdiction even to undertake the limited review of that body's action permitted by *Carducci*.

## B.

The CSRA did not eliminate preexisting rights to seek relief in federal court for

constitutional violations. *Borrel,* 682 F.2d at 989; *see also Andrade v. Lauer,* 729 F.2d 1475, 1491 (D.C.Cir.1984) (constitutional claims need not be adjudicated first through the CSRA). Plaintiff broadly alleges that the evaluation of his application constituted a denial of his rights to due process of law under the Fifth Amendment.

*Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), discuss the requirements of the due process clause in the context of public employment. The Court doubts that Moncrief can successfully meet the standards articulated in those cases and demonstrate a liberty or property interest in the ALJ positions for which he applied. In any event, the allegations of his complaint are not well enough defined for the Court to give them serious consideration.[5] The path followed by the court in *Carducci* in a similar situation is appropriate here: "[W]here counsel has made no attempt to address the issue, we will not remedy the defect.... We therefore decline to entertain [plaintiff's] asserted but unanalyzed constitutional claim." 714 F.2d at 177 (citations omitted); *accord White v. Office of Personnel Management,* C.A. No. 85–0932, slip op. (D.D.C. May 30, 1985), *appeal pending,* No. 85–5823 (D.C.Cir.).

On basis of the foregoing, the plaintiff's motion for summary judgment is denied and the defendant is granted summary judgment.

---

**5.** Counsel had an opportunity at oral argument to outline his constitutional claims but only made general reference to the arbitrary and capricious nature of defendants' actions.