Joel D. FREEDMAN, Plaintiff,

v.

Thomas TURNAGE, Administrator of the Veterans Administration and the United States of America, Defendants.

No. CIV–86–578T.

United States District Court, W.D. New York.

Oct. 29, 1986.

New York Civil Liberties Union, Genesee Valley Chapter (Mark A. Drexler, of counsel) Rochester, N.Y., for plaintiff.

U.S. Atty.'s Office (Christopher V. Taffe, Asst. U.S. Atty., of counsel), Rochester, N.Y., for defendants.

## DECISION and ORDER

TELESCA, District Judge.

Joel Freedman has been a social worker at the Veterans Administration Medical Center in Canandaigua, New York since 1969. Over the years he has written numerous articles and letters to various magazines and newspapers including "Social Work Magazine", "Stars and Stripes" and The Canandaigua Daily Messenger concerning the medical treatment of institutionalized patients, including those in nursing homes, VA facilities and prisons. At times however, plaintiff's writings have been particularly critical of the treatment of patients at the Canandaigua Veterans Administration Medical Center.

Prior to April of 1983 plaintiff had regularly received a "highly satisfactory" rating of his job performance as a social worker. In June of 1983 plaintiff had published several letters and an article alleging abuse of the use of nasogastric feeding tubes in various Veteran Administration hospitals, state hospitals and nursing homes. In April of 1984 plaintiff had published several letters and an article in "Social Work Magazine" critical of excessive drugging in VA medical centers. On May 3, 1984 plaintiff was given a notice of proposed suspension stating two reasons; the first was the publication of the letters and articles concerning excessive drugging, the second was that plaintiff had failed to prepare a report substantiating his claim of overdrugging as his immediate supervisor had directed him to do. Plaintiff contends that he was unable to prepare such a report because the VA refused to make available to him necessary medication records from which to make the report. Plaintiff was suspended for 11 days beginning June 12, 1984.

Pursuant to the grievance procedure negotiated between the American Federation of Government Employees and the Veterans Administration, plaintiff filed a grievance protesting his suspension. He continued the grievance through the third step, review by the Medical Center Director, and was denied at each stage. Plaintiff then requested that his union submit the grievance to Binding Arbitration pursuant to 5 U.S.C. § 7121(b)(3)(C). The union chose not to take the case to arbitration.

Prior to the actual suspension plaintiff filed a complaint with the Office of Special Council of the Merit Systems Protection Board protesting his notice of proposed suspension. 5 U.S.C. § 1206(a)(1) states that "the special council shall receive any allegation of prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken." Prohibited personnel practices are defined in 5 U.S.C. § 2302, subsection (b)(8), known as the "whistle blower statute", states that

Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority ... take or fail to take a personnel action with respect to any employee or applicant for

employment as a reprisal for (A) a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences (i) a violation of any law, rule or regulation or (ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law and if such information is not specifically required by executive order to be kept secret in the interest of national defense or the conduct of foreign affairs; ...

If the Office of Special Counsel determines that a personnel action is about to be taken against an employee as a result of a prohibited personnel practice it can request, pursuant to 5 U.S.C. § 1208, that the Merit System Protection Board stay the personnel action. The system of the Merit Systems Protection Board and the Office of Special Counsel, 5 U.S.C. § 1201 *et seq*, does not provide for any appeal from a determination by the Office of Special Counsel that no prohibited personnel practice has occurred.

Plaintiff filed suit in this Court alleging that the 11 day suspension violated his First Amendment rights. The Government has moved pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint on the grounds that the Court lacks subject matter jurisdiction. Particularly, the Government alleges first that the plaintiff has failed to exhaust his administrative remedies and second that plaintiff is barred from bringing a *Bivens*-type action in this Court because of the Supreme Court's determination in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) that employees who have been provided with a comprehensive administrative remedy cannot bring a *Bivens*-type action.

## DISCUSSION

### A. Exhaustion of Administrative Remedies

The exhaustion doctrine provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted". *Myers v. Bethlehem Ship Building Corporation*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The reason for the exhaustion doctrine is to allow an agency to develop the factual background, exercise its discretion, and apply its expertise. *McKart v. The United States*, 395 U.S. 185, 89 S.Ct. 1657, 1666, 23 L.Ed.2d 194 (1969).

Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved.

*McKart, supra,* at 1662.

As counsel for the plaintiff noted at oral argument, there were perhaps four separate systems of administrative remedy which the plaintiff could have used in challenging the propriety of his suspension: Appeal to the Merit Systems Protection Board ("MSPB"), appeal to the Office of Special Counsel ("OSC"), appeal to the Federal Labor Relations Authority ("FLRA"), and finally, the filing of a grievance pursuant to the Collective Bargaining Agreement. The Government's motion to dismiss is based on its allegation that the plaintiff failed to exhaust the administrative remedies available to him through the OSC and the grievance procedure. At oral argument counsel for both parties made reference to the FLRA procedures. In order to understand the administrative scheme created by the Civil Service Reform Act of 1978 it is essential to review the role of the MSPB. Therefore, an analysis of each of the four potential administrative remedies is necessary to determine whether the plaintiff has properly brought this action.

### 1. Merit System Protection Board

The Civil Service Reform Act of 1978 eliminated the Civil Service Commission and created two new agencies; the Office of Personnel Management and the Merit Systems Protection Board. The Officer of Personnel Management carries on the administrative functions of the Civil Service System. The Merit Systems Protection

Board is the appeals agency to which civil service employees can appeal to protest disciplinary actions.

Essential purpose of this bifurcation was "to ensure that those who are responsible for administering the civil service system will not have the primary responsibility of determining whether that system is free from abuse" S.Rep.

No. 95–969, 95th Cong., 2nd Sess. 24 (1978), *Perez v. Army and Air Force Exchange Service*, 680 F.2d 779, 784 (D.C.Cir. 1982). 5 U.S.C. § 7701(a) states that "an employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7512 defines "actions covered". These include "(1) a removal; (2) a suspension for more than 14 days; ...". Here plaintiff's suspension was for less than 14 days and therefore it does not constitute an adverse action appealable to the MSPB. *Mercer v. Department of Health and Human Services*, 772 F.2d 856, 858 (Fed.Cir.Ct. of App.,1985). Thus this first avenue of administrative remedy, the one most basic to the Civil Service Reform Act system, was not available to the plaintiff. It was not, therefore, a remedy which he could be expected to have exhausted.

### 2. Office of Special Counsel

Assuming a disciplinary action falls short of being an "adverse action" the employee may still be able to seek relief from the MSPB if the action constitutes a "prohibited personnel practice". 5 U.S.C. § 2302. The employee cannot appeal directly to the MSPB, but must bring his claim to the Office of Special Counsel. If the Special Counsel, and independent office of the MSPB, decides that there is reasonable grounds to support the allegation it will bring a "corrective action proceeding" before the MSPB.

In contrast to employee appeals brought under Section 7701, which seeks Board resolution of individual employment disputes, the primary function of corrective action proceedings is to enforce the public interest in a merit system free of abuse.

*Perez v. Army and Air Force Exchange Services*, 680 F.2d 779, 788 (citing *Frazier v. Merit Systems Protection Board*, 672 F.2d 150 (D.C.Cir.1982).

Mr. Freedman filed a complaint with the OSC on May 4, 1984 protesting his proposed suspension. He alleged that the suspension was in violation of a prohibited personnel practice, specifically § 2302(b)(8) —"the whistle blower statute". On January 24, 1984 the OSC determined that although Mr. Freedman was engaged in "protected activity" the proposed suspension was not motivated by said protected activity. OSC closed its file on the matter and did not bring a corrective action proceeding before the MSPB. Courts have held, and the defendant has conceded, that appeal to the Office of Special Counsel is not a mandatory review procedure which is subject to the exhaustion doctrine. *Frazier v. Merit Systems Protection Board*, 672 F.2d 150 (D.C.Cir.1982); *Dugan v. Ramsay*, 727 F.2d 192 (1st Cir.1984).

In footnote 1 on page 5 of defendant's memorandum of law in support of motion to dismiss it states the following:

We note that the First Circuit in *Dugan, supra;* holds that the Special Counsel is neither a mandatory review procedure nor an "exhaustible avenue for further agency action". *Id.*, at 194. With this we do not disagree. We are only saying that since the plaintiff initiated this review process, he should have pursued it to the final decision before seeking judicial review.

What the defendant fails to grasp is that a decision of the Special Counsel to close its file and not bring a corrective action proceeding is a final decision. This is the very reason why appeal to the Special Counsel is not considered a mandatory review procedure.

Therefore, on this second ground, defendants exhaustion doctrine argument also fails.

### 3. The Federal Labor Relations Authority

The grievance procedure established under the Collective Bargaining Agreement is the exclusive procedure for resolving grievances which fall within its coverage. 5 U.S.C. § 7121(a)(1). It is true that Mr. Freedman could have brought an unfair labor practice proceeding before the FLRA against the union pursuant to 5 U.S.C. § 7116(b)(1) and (8) for failure to take his grievance to arbitration. While such an unfair labor practice proceeding might provide Mr. Freedman with the back pay damages he seeks, § 7118(a)(7)(C), it would not provide him with attorney's fees nor injunctive or declaratory relief against the VA.

■ It is clear that the only relief Mr. Freedman could seek through appeal to the FLRA would be against the union for its failure to file a grievance and not against the Veterans Administration for its alleged violation of his First Amendment rights. Appeal to the FLRA cannot, therefore, be considered an administrative avenue which he must exhaust before filing suit in this Court against the VA.

For a similar holding in the private sector *see Clayton v. International Union, etc.,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

### 4. Grievance Procedure

Summarizing the Supreme Court's discussion in *McKart, supra,* the District of Columbia Court of Appeals concluded that:

The exhaustion requirement serves four primary purposes. First, it carries out the congressional purpose in granting authority to the agency by discouraging the "frequent and deliberate flouting of administrative process [that] could ... encourage people to ignore its procedures." *McKart, supra,* 395 U.S. at 195, 89 S.Ct. at 1663. Second, it protects agency autonomy by allowing the agency the opportunity in the first instance to apply its expertise, exercise whatever discretion it may have been granted, and correct its own errors. Third, it aids judicial review by allowing the parties and the agency to develop the facts of the case in the administrative proceeding. Fourth, it promotes judicial economy by avoiding needless repitition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all if the parties successfully vindicate their claims before the agency.

*Andrade v. Lauer,* 729 F.2d 1475, 1484 (D.C.Cir.1984). The *Andrade* case specifically did not reach the question of whether employees of a federal agency would be able to maintain a suit against their employer in federal court if their union had blocked their use of the administrative process by refusing to take their complaint to arbitration. *Andrade, supra,* at 1485 n. 15.

In this case Mr. Freedman clearly did not deliberately flout the administrative process, but rather sought relief through the administrative process via the two avenues that were open to him. The Veterans Administration was provided three opportunities to apply its expertise and correct any errors in the grievance procedure. Plaintiff's grievance was reviewed by Richard A. Lang, Acting Chief of Social Work Services, Ernest C. Kott, Chief of Social Work Services, and finally, by Dewayne C. Robertson, Medical Center Director. In addition, the VA was consulted by the Office of Special Counsel during its investigation. While no substantial record of the facts has been developed either through the grievance procedure or by the Office of Special Counsel, those agencies had the opportunity to conduct whatever fact finding they found necessary.[1]

---

1. There is in fact an extensive record which was produced by the Merit Systems Protection Board relating to the fact of this case but not directly applicable to the issues presented here. On September 18, 1984, after the suspension in question here, plaintiff received a notice of discharge effective October 5, 1984. Plaintiff was discharged on that date. The discharge, being an adverse action, was appealed directly to the Merit Systems Protection Board, 5 U.S.C. § 7512(1). The supposed basis for the discharge was unsatisfactory performance. The MSPB produced a 22 page record in which it concluded that there was absolutely no basis for

■ Based on a review of the purposes for the exhaustion requirement as articulated in *McKart, supra,* and *Andrade, supra,* I conclude that a federal employee who has continued in the grievance procedure through all the various stages which were in his control, but whose union refused to submit the grievance to binding arbitration, should not be barred from suit by the exhaustion doctrine.

### B. *Bivens*-type Remedy

The Government's second basis for seeking dismissal for lack of subject matter jurisdiction is its contention that "judicially created remedies are not appropriate in the realm of federal employment in view of the comprehensive procedural and substantive statutory provisions created by the Congress." The Government relies for this proposition on *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

The Supreme Court has held that the Constitution itself supports a private cause of action for damages against a federal official. *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). In *Bush v. Lucas, supra,* the Court indicated that there were limits to the availability of a *Bivens*-type remedy.

> The federal courts' statutory jurisdiction to decide federal questions confers adequate power to award damages to the victim of a constitutional violation. When Congress provides an alternative remedy, it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the courts' power should not be exercised.

*Bush, supra,* at 2411.

The *Bush* case also involved a federal employee suing for violation of his First Amendment rights. In its effort to determine whether or not it should exercise its power the Court reviewed the history of the development of the Civil Service and the administrative relief afforded to federal employees.

The Court in *Bush* determined that the plaintiff had the right to appeal his demotion to the Civil Service Commission's Federal Employee Appeals Authority, the predecessor of the MSPB.

> The Appeals Authority was required to hold a trial-type hearing at which the employee could present witnesses, cross examine the Agency's witnesses, and secure the attendance of Agency officials, ... An adverse decision by the FEAA was judicially reviewable by either Federal District Court or the Court of Claims. In addition, the employee had the right to ask the Commission's Appeal Review Board to reopen an adverse decision by the FEAA.

*Bush, supra,* at 2416 (statutory citations omitted).

The Court then identified the question before it as being

> whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue.

The Court answered this question in the negative.

Justice Marshall (concurring) stated,

> I write separately only to emphasize that in my view a different case would be presented if Congress had not created a comprehensive scheme that was specifically designed to provide full compensation to Civil Service employees who are discharged or disciplined in violation of their First Amendment rights ... and

the unsatisfactory rating or the discharge and that "appellant's whistle-blowing activity was a motivating factor in the Agency's removal action. The record is replete with evidence of

pretext which demonstrates that these reasons [for dismissal] to be little more than a cover up. Appellant presented evidence of animus which the agency neither refuted or explained."

that affords a remedy that is substantially as effective as a damages action. *Bush, supra,* at 2418.

The *Bush* decision was a particular application of what the Supreme Court had already said in *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), "were Congress to create equally effective alternative remedies, the need for damages relief might be obviated." *Davis v. Passman, supra* at 2278. The question to be determined here is whether a federal employee who cannot take his claim to the Merit Systems Protection Board, nor have it reviewed at some other type of evidentiary hearing, such as an arbitration proceeding, has any "equally effective alternative remedies."

In *Bartel v. FAA,* 725 F.2d 1403 (1984) the District of Columbia Circuit reversed and remanded a District Court decision which had dismissed the plaintiff's claim based on *Bush.*

> The Administrative scheme which Congress established to protect civil servants' rights preempts a constitutional claim for damages based on conduct remediable under that scheme.... The District Court, however, must entertain Bartel's due process claims for damages attributable to wrongful conduct for which that scheme provides no remedy, along with those for injunctive relief.

*Bartel, supra* at 1415. *See also, Williams v. IRS,* 745 F.2d 702 (D.C.Cir.1984); *Pope v. Bond,* 613 F.Supp. 708 (D.C.D.C.1985).

■ As discussed above, with reference to the exhaustion doctrine, plaintiff was unable to seek a remedy at the Merit Systems Protection Board. The only other possible avenue of effective remedy was through the grievance procedure. This avenue was cut off by the union's decision not to take plaintiff's case to arbitration. In holding that plaintiff can proceed with his *Bivens*-type action because he has no effective administrative remedy, I do not hold that the Government is to be held liable for the union's decision not to arbitrate. Where the administrative system leaves a federal employee only one avenue to provide redress for a violation of his constitutional rights, and that avenue can be cut off by someone other than the employee himself, then no effective avenue of administrative remedy exists.

> "The central features of the Congressional remedial system in *Bush* and of the alternative *Bivens* remedy are the right to a forum in which to establish a constitutional violation and the right to enforce significant relief if a violation is shown. Neither feature exists [here]".

*Kotarski v. Cooper,* 799 F.2d 1342 (9th Cir.1986) (holding that a probationary employee, who could not use the grievance procedure nor reach the Merit Systems Protection Board, was not barred by *Bush* from bringing a *Bivens*-type action).

The eleven day suspension did not constitute an adverse action under 5 U.S.C. § 7512. Direct Appeal to the FLRA was foreclosed by 5 U.S.C. § 7121(a)(1) which established the grievance procedure as the exclusive remedy for plaintiff's complaint. Although the grievance procedure permits the plaintiff to have an evidentiary hearing on his complaint, the choice of whether or not to proceed to such a hearing (arbitration) is effectively denied to the plaintiff. This is not a "comprehensive scheme designed to provide full compensation to a federal employee" whose First Amendment rights were violated. By limiting a continuing series of eleven, twelve or thirteen day suspensions, the plaintiff would not be entitled to arbitration (if his union refused to take the case) and never able to reach the MSPB (unless the Office of Special Counsel were to exercise its non-reviewable discretion in plaintiff's favor).

For these reasons I deny defendant's motion to dismiss plaintiff's cause of action.

## C. Agency Defendants

■ At oral argument the defendant raised the argument that a *Bivens*-type action cannot be brought against the Veterans Administration but only against individual federal officials. The Government did not cite any cases to support this proposition and the plaintiff was not given any notice that this issue would be raised. The case law clearly supports the Government's proposition, "Bivens ... implies a cause of

action only against federal officials.... Thus, the plaintiff must ferret out the officials directly responsible for the alleged constitutional violation." *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir.1982), *cert. denied, Laswell v. Weinberger*, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (*See also*, cases cited therein.)

The United States and the Veterans Administration are not proper defendants because of sovereign immunity, and therefore I dismiss the complaint as to the defendant United States of America and the defendant Veterans Administration.

The complaint does name one individual defendant, Thomas Turnage, Administrator of the Veterans Administration. Plaintiff has thirty (30) days in which to amend his complaint to name other individual defendants, if any, whom he claims are liable for the deprivation of his First Amendment rights.

## CONCLUSION

Defendant's motion to dismiss for lack of subject jurisdiction is denied. The complaint is dismissed as to the defendants United States of America and the defendant Veterans Administration. Plaintiff has thirty (30) days in which to amend his complaint.

SO ORDERED.