Jacqueline McGREGOR, Plaintiff,

v.

Dr. Peter GREER, Lauro Cavazos, United States Department of Education, Michelle Easton, and Arthur Kelly, Defendants.

Civ. A. No. 88–2544 SSH.

United States District Court, District of Columbia.

Sept. 27, 1990.

William L. Bransford, Washington, D.C., for plaintiff.

Mark E. Nagle, Asst. U.S. Atty., U.S. Attorney's Office, Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendants' motion to dismiss or, in the alternative, for partial summary judgment. Upon consideration of defendants' motion, plaintiff's opposition thereto, defendants' reply, and the entire record herein, defendants' motion is granted in part.

## BACKGROUND

Plaintiff Jacqueline McGregor is the former Executive Director of the Intergovernmental Advisory Council on Education (IACE). She brings this action to challenge her removal from that position and to seek redress for alleged wrongful acts by various individuals in the events surrounding her termination. Plaintiff alleges the following facts.

In February 1987, the Secretary of Education appointed plaintiff to the Schedule C position of Executive Director of the IACE. On November 6, 1987, during off-duty hours, defendants Michelle Easton and Arthur Kelly hand-delivered to plaintiff's home notice of her termination. This delivery was at the instruction of Peter Greer, Intergovernmental and Interagency Affairs Deputy Undersecretary. In order to deliver the notice, defendants Easton and Kelly entered the non-public lobby of plaintiff's apartment building and attempted to ascend to her apartment. The front desk attendant refused to admit defendants, and then called plaintiff to inform her that they would not leave and were impermissibly using the lobby phone. Plaintiff then agreed to meet defendants Easton and Kelly in the lobby. There, Easton delivered the letter of termination, but provided no reason for plaintiff's removal.

On November 6, 1987, prior to the delivery of the termination notice to plaintiff's home, defendant Michelle Easton ordered that the materials in plaintiff's office be seized and impounded for the stated purpose of securing government property. Defendant Peter Greer's staff later inventoried plaintiff's personal items and impounded them. In the search process,

plaintiff alleges, defendant Kelly and others "insisted on reading every word" of her private letters and records. Plaintiff was temporarily denied access to personal items locked in her desk drawer. On November 25, 1987, defendant Easton delivered plaintiff's personal property recovered in the search to the Inspector General of the Department of Education.

On two occasions, November 19 and November 29, 1987, plaintiff attempted to enter the Department of Education building to recover her personal materials and perform outprocessing. She was denied access to the building unless accompanied by a uniformed guard.

On December 17, 1987, Peter Greer delivered a letter to an IACE member referencing an ongoing investigation by the Inspector General of plaintiff's activities at the IACE. On December 29, 1987, the letter was entered into the public record of a meeting of the IACE Executive Committee. On January 6, 1988, the letter was released to the public.

On June 17, 1988, defendant Greer delivered a letter to IACE Chairman David Harris stating the reasons for plaintiff's dismissal. He again referenced the Inspector General's investigation of plaintiff, and acknowledged that the Inspector General reported insufficient evidence to justify criminal charges. Plaintiff is now allegedly unable to secure government employment as a result of the damage which the December 17 and June 17 letters caused to her reputation.

Plaintiff filed an eight-count complaint against defendants, alleging (1) that Greer had insufficient authority to terminate her, and that she should therefore be reinstated under the Administrative Procedure Act (APA), 5 U.S.C. § 701(a)(2); (2) that she is the victim of sex-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16; (3) that defendants violated her liberty interest in her reputation without due process by releasing the December 17 letter to the public; (4) that defendants violated the Privacy Act of 1974, 5 U.S.C. § 552a, by releasing the December 17 and June 17 letters; (5)

that defendants violated her Fourth Amendment rights by delivering her termination to her home after working hours, by searching her office and desk, and by restricting her access to the Department of Education building; (6) that she suffers from defendant Greer's intentional infliction of emotional distress; and (7) that Greer tortiously interfered with her business relationships.

Defendants submitted their motion to dismiss, or in the alternative for partial summary judgment, challenging all counts except Count 2, which alleges sex-based discrimination.

## COUNT 1

■ In Count 1, plaintiff claims that defendant Greer lacked authority to terminate her. She seeks judicial review and declaratory judgment under the APA. Defendants, in their motion to dismiss Count I, argue that the Civil Service Reform Act of 1978 (CSRA) defines the exclusive remedies available to plaintiff for adverse personnel actions, and that therefore this claim must be dismissed. The Court agrees, and Count 1 is accordingly dismissed.

The CSRA creates an intricate scheme of remedies for federal employees who suffer adverse personnel actions. The available remedies vary according to the employee's position and the action being challenged. This variance reflects an attempt to strike a balance between protecting the rights of federal employees and allowing for an efficient government. Congress designed the CSRA to replace a haphazard patchwork of rules for civil servants with one integrated system for administrative and judicial review of adverse personnel action. *U.S. v. Fausto,* 484 U.S. 439, 444, 108 S.Ct. 668, 671, 98 L.Ed.2d 830 (1988).

The CSRA specifically exempts plaintiff, as a Schedule C excepted service employee, from any remedies for adverse personnel actions, because of her confidential and policy-making position. 5 U.S.C. §§ 7511(b), 2302(a)(2)(B)(i). Plaintiff argues that because she is exempt from its remedial provisions, she does not fall within the purview of the CSRA, and that she therefore may bring suit under the APA pursuant to her pre-CSRA rights.

On the contrary, however, this Court finds that Congress's explicit denial of a remedy to Schedule C employees shows an intention to deny them court access to challenge dismissals. Congress did not overlook plaintiff's position in drafting the CSRA; it specifically addressed it, providing no recourse for adverse personnel actions. To disturb this specific provision would impermissibly upset the balance Congress strove to achieve between federal employees' rights and an efficient government. *See Spagnola v. Mathis,* 859 F.2d 223, 226 (D.C.Cir.1988) (citing *Bush v. Lucas,* 462 U.S. 367, 389, 103 S.Ct. 2404, 2417, 76 L.Ed.2d 648 (1983)). Allowing plaintiff access to prior avenues of relief would bypass the scheme Congress developed and return to the largely incoherent patchwork they sought to remedy.

■ Our courts have consistently held that the CSRA must be read as a comprehensive system to ensure that the judiciary defers to Congressional determination of a complex program such as civil service employee protection. *See, e.g., Carducci v. Regan,* 714 F.2d 171 (D.C.Cir.1983); *Spagnola,* 859 F.2d at 223; *Bush,* 462 U.S. at 367, 103 S.Ct. at 2404; *Fausto,* 484 U.S. at 439, 108 S.Ct. at 668. Further, the comprehensive nature of this scheme is more important than the adequacy of specific remedies. *Spagnola,* 859 F.2d at 227. In light of these principles, the CSRA defines plaintiff's exclusive rights as a public employee, regardless of her lack of remedies. Count 1 is accordingly dismissed.

## COUNT 3

In Count 3, plaintiff claims that defendant Cavazos, Secretary of the Department of Education, violated her liberty interest in her reputation by releasing information contained in the December 17 letter. Defendants contend that any damage to her reputation falls short of a constitutionally cognizable harm. Because the Court agrees that plaintiff's harm does not rise to

the level of a constitutional injury, summary judgment is granted as to Count 3.

■ Our courts have recognized that a public employee has a liberty interest in her professional reputation, particularly when forced to find other employment. *Pope v. Bond,* 641 F.Supp. 489, 501 (D.D.C. 1986) (citing *Paul v. Davis,* 424 U.S. 693, 701–10, 96 S.Ct. 1155, 1160–65, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 572–75, 92 S.Ct. 2701, 2706–08, 33 L.Ed.2d 548 (1972)). In order to set forth a constitutionally cognizable liberty interest claim, plaintiff must allege two distinct harms: (1) a change in status beyond reputation, and (2) a disabling stigma resulting from the government's actions. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1111 (D.C.Cir.1985).

■ Plaintiff first must allege damage to some interest beyond her reputation, such as loss of present or future employment. *Id.* at 1111. The effect on future employment must extend beyond disadvantage or impediment and reach the level of foreclosing plaintiff's freedom to take advantage of other employment opportunities. *Mazaleski v. Treusdell,* 562 F.2d 701, 713 (D.C.Cir.1977) (citing *Roth,* 408 U.S. at 573–74, 92 S.Ct. at 2707). In the present case, plaintiff meets this criterion. She alleges that she is unable to secure government employment as a result of the allegedly damaging information that reached the public record. Defendants have offered no evidence to refute this averment. (Complaint at 8, McGregor Declaration at 12.)

Plaintiff also must allege that the government has created a stigma against her good name and integrity, and that the stigma has hampered future employment opportunities. *Doe,* 753 F.2d at 1111. A stigma may result from a termination

> "for dishonesty, for having committed a serious felony, for manifest racism, for serious mental illness, or for lack of intellectual ability, as distinguished from [ ] performance...." The former characteristics imply an inherent or at least a persistent personal condition, which both

the general public and a potential future employer are likely to want to avoid. *Harrison v. Bowen,* 815 F.2d 1505, 1518 (D.C.Cir.1987) (citing *Mazaleski,* 562 F.2d at 714 (citations omitted)). Plaintiff fails to allege such a constitutionally recognized stigma. Charges against her which might imply dishonesty or lack of integrity never came to fruition. The Inspector General found insufficient evidence to prosecute plaintiff, and defendant Greer made that fact apparent in the December 17 letter. Moreover, the investigative report itself is available to the public, and thus to any potential employer who is interested. For this Court to adopt a policy which labelled every government investigation a stigmatic harm would undercut the investigative process itself. A mere investigation does not indicate wrongdoing. Therefore, we find that any harm to plaintiff's reputation did not rise to the level of a constitutional injury. Summary judgment is therefore granted as to Count 3.

## COUNT 4

In Count 4, plaintiff claims that publication of the December 17 and June 17 letters violates the Privacy Act of 1974, as does defendant's failure to maintain the December 17 letter on file. 5 U.S.C. § 552a. Defendants deny any violation of the Privacy Act. The Court finds that release of the December 17 letter does not violate the Privacy Act and therefore grants summary judgment as to this portion of Count 4. We further find that the record insufficiently addresses the June 17 letter, making summary judgment improper as to that portion of Count 4.

*The December 17 letter*

■ The Privacy Act contains a general prohibition on disclosure of records pertaining to individuals. However, in order for a record to be protected under the Act, it must be contained within a "system of records." *Id.* at § 552a(b). The term "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individu-

al." *Id.* at § 552a(a)(5). This definition applies to both disclosure of personal documents under § 552a(b) and access by the subject of a file to personal documents under § 552a(d).

Our courts have held, in keeping with the language of the statute, that

> even if information pertaining to the requestor appears in a system of records, it need not be disclosed [under the access provision] unless the information is retrievable by means of the requestor's name or other personal identifier. That it can be easily retrieved in some other way by some other identifier is wholly beside the point.

*Smiertka v. United States Dep't of Treasury,* 447 F.Supp. 221, 228 (D.D.C.1978), *remanded on other grounds,* 604 F.2d 698 (D.C.Cir.1979); *see also Grachow v. United States Customs Serv.,* 504 F.Supp. 632, 635 (D.D.C.1980). Because a single definition of a system of records governs both disclosure and access, the above principle applies in the present case. The December 17 letter is not retrievable by plaintiff's name. (Easton Declaration at 2, 3.) That it may be recoverable under its recipient's name is irrelevant. One other court has similarly found that records are not protected under the Privacy Act if not retrievable by the individual's name or personal identifier. *See Savarese v. United States Dep't of Health, Educ., and Welfare,* 479 F.Supp. 304 (N.D.Ga.1979), *aff'd,* 620 F.2d 298 (5th Cir.1980). Therefore, we find the Privacy Act does not protect the December 17 letter.

Plaintiff argues that although defendants show the record was not retrievable by plaintiff's name, they do not specifically address whether it is retrievable by some other personal identifier. However, plaintiff has not alleged any other identifier by which the letter might be retrieved. Defendants need not challenge allegations that have not been made. Based on the parties' affidavits and the entire record, the December 17 letter is not within a system of records, and its publication did not violate the Privacy Act.

■ Plaintiff additionally claims that 5 U.S.C. § 552a(g)(1)(C) entitles her to a remedy against defendants for failing to maintain the December 17 letter in a system of records. This section provides a civil remedy when an agency:

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual....

This language clearly refers to incomplete records which induce adverse determinations. It applies when an incomplete record results in an adverse decision for plaintiff. Plaintiff does not allege that absence of the December 17 letter from her file resulted in any adverse decision. The letter, rather, attempts to explain prior adverse actions against her. Thus, § 552a(g)(1)(C) fails to provide a remedy for plaintiff, and the Court grants summary judgment as to the portion of Count 4 addressing the December 17 letter.

*The June 17 letter*

■ Defendants argue that the June 17 letter does not violate the Privacy Act because it falls within an exception to the general prohibition on disclosure. The Act allows for disclosure of personal information to "those officers and employees of the agency who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). Accordingly, defendants argue that IACE chairman Harris needed the information presented in the June 17 letter in order to perform job-related duties. Defendants, however, submit nothing to indicate Harris's need for the information. Plaintiffs contend that Harris did not need the information. (Plaintiff's Opposition to Defendant's Motion to Dismiss at 27.) Thus, a material issue of fact remains on this issue, and the Court cannot properly grant summary judgment. Therefore, the portion of Count 4 dealing with the June 17 letter may not be dismissed.

## COUNT 5

■ In Count 5, plaintiff alleges that defendants violated her Fourth Amendment rights in three ways: (1) by delivering her termination to her home during off-duty hours; (2) by denying her free access to the Department of Education building; and (3) by searching her office and desk. Defendants first argue that they are entitled to qualified immunity and that Count 5 must therefore be dismissed. Further, they argue that if qualified immunity does not apply to them, the CSRA nevertheless prevents plaintiff's claim because it is the exclusive remedy available to civil service employees for adverse personnel actions. The Court finds that defendants are entitled to qualified immunity with respect to the first two charges. They are not, however, entitled to qualified immunity as to the desk search, nor does the CSRA preclude this claim.

The qualified immunity doctrine provides that a government official performing discretionary functions is shielded from liability for civil damages if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If a reasonable person would realize that what he is doing violates a clearly established right of plaintiff, then immunity does not attach. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Therefore, in order to determine whether qualified immunity attaches, we must first determine whether plaintiff alleges violation of any clearly established rights.

### Termination Delivery

■ Delivery of plaintiff's termination to her home during off-duty hours violated no clearly established right of plaintiff. This District has not recognized any reasonable expectation of privacy in the lobby or common hallways of an apartment building. In fact, the case law most applicable to the present case indicates that an individual is not entitled to such a reasonable expectation. In *U.S. v. Perkins,* the court held that the corridors of an apartment building, as distinguished from the rented rooms themselves, do not entitle the building dwellers to an expectation of privacy from police. 286 F.Supp. 259 (D.D.C.1968), *aff'd,* 432 F.2d 612 (D.C.Cir.), *cert. denied,* 400 U.S. 866, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970). The court embraced a finding of the United States Court of Appeals for the Second Circuit: "We have been cited no authority which would include the lobby of a multi-tenanted apartment house within the 'curtilage' of each tenant. Such authority as there is points the other way." *Id.* at 263 (citing *U.S. v. Miguel,* 340 F.2d 812, 814 (2d Cir.), *cert. denied* 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965)). Although in *Perkins* the apartment building had an unlocked and unguarded front door, while in the present case the door was both locked and guarded, a more recent Second Circuit decision indicates that the same rule applies in both cases. In *U.S. v. Holland,* the court stated that "[i]t is the established law of this Circuit that the common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy even though they are guarded by locked doors. (Citations omitted)." 755 F.2d 253, 255–56 (2d Cir.1985). Thus, the Court concludes that plaintiff did not have a "clearly established" right to privacy in the lobby of her apartment. Therefore, defendants are entitled to qualified immunity on this issue.

### Restricted Access to Building

■ Defendants also failed to violate any clearly established Fourth Amendment rights by restricting plaintiff's access to the Department of Education building after she was fired. The gravamen of a Fourth Amendment claim is that a reasonable expectation of privacy is violated by a search or seizure. *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986). Plaintiff's averments do not state such a claim; she alleges no reasonable expectation of privacy, nor a violation of her privacy. Therefore, defendants are entitled to qualified immunity for limiting plaintiff's access to the building.

## Office Search

 Defendants' search of plaintiff's office, and seizure of the contents, however, pose a more difficult question. The Supreme Court recently held in *O'Connor v. Ortega* that a government employee may be entitled to a reasonable expectation of privacy in her office. 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). Where a public employee has her own office or desk which co-workers and superiors normally do not enter, and where no agency policy or regulation warns the employee that an expectation of privacy is unreasonable, an expectation of privacy may be reasonable. However, this privacy expectation may be limited by realities of the workplace. *Id.* at 711, 107 S.Ct. at 1495.

 In the present case, the record yields insufficient information to determine on a summary judgment motion whether plaintiff had a reasonable expectation of privacy in her office. Plaintiff maintained government records in her office, but nothing in the record indicates who, if anyone, had regular access to these files. Therefore, the Court cannot determine the normal office practices regarding plaintiff's office and desk. In addition, the Department of Education's policies and regulations remain unclear. Plaintiff claims she knows of no other employee who experienced such a search in his or her office. (McGregor Declaration at 9.) Defendants, however, maintain that the search was common practice. (Easton affidavit at 4.) Written policies concerning involuntary termination procedures are unclear. While they do not provide for searches and inventories of employees' offices, they require the staff to recover government property from terminated employees within a short period of time. (Defendants' Reply, Attachment 1 at 5.) Therefore, a material issue of fact remains as to whether plaintiff had a reasonable expectation of privacy in her office.

The Court cannot allow defendants to enjoy qualified immunity simply because they contradict plaintiff's affidavits with their own. As the court found in *Gladden v. Barry*, to do so

would convert the qualified immunity granted to federal officials into absolute protection—because simply by filing an affidavit denying wrongdoings officials could create a complete shield against suit; it would require the courts to prematurely terminate many plaintiffs' claims that could well be meritorious; and it would defeat the normal summary judgment process by requiring the Court to accept controverted facts as established solely on the basis of one party's affidavit.

558 F.Supp. 676, 679 (D.D.C.1983). Therefore, the Court declines to grant summary judgment on this issue.

 Defendants argue that, regardless of whether plaintiff had a reasonable expectation of privacy, defendants did not violate her clearly established Fourth Amendment rights because their search was reasonable under the standards of *O'Connor*, 480 U.S. at 709, 107 S.Ct. at 1492. In *O'Connor*, the Court found that the appropriate test to determine whether a search for noninvestigatory, work-related purposes violates the Fourth Amendment is whether the search was (1) justified at its inception, and (2) reasonable in scope. 480 U.S. at 726, 107 S.Ct. at 1503. However, the parties offer conflicting testimony on both of these issues.

First, the parties dispute the justification for the search in the present case. The Supreme Court has found that: "Ordinarily, a search of an employee's office by a supervisor will be 'justified at its inception' when there are reasonable grounds for suspecting ... that the search is necessary for a noninvestigatory, work-related purpose such as to retrieve a needed file." *Id.* at 726, 107 S.Ct. at 1503. Plaintiff claims that the search was not necessary for such purposes. She states that she attempted to cooperate with defendants by planning meetings with them, and that they had no reason to believe she would not deliver government property when asked. (McGregor Declaration at 2, 3, 12.) Defendants, in contrast, allege that plaintiff cancelled all scheduled meetings and refused to cooperate in handing over government

property. (Easton Affidavit at 4, 5.) This dispute over the necessity of the search makes summary judgment improper.

In addition, the parties dispute whether the desk search was reasonable in scope. Plaintiff alleges that defendants "insisted on reading every word" of her personal letters. (McGregor Declaration at 8.) Defendants, however, claim they read only what was necessary to determine what belonged to the government. (Weinstein Interrogatories at 6.) Thus, the reasonableness of the scope of the search also remains in issue.

If plaintiff's allegations are true, defendants violated clearly established constitutional rights. Assuming plaintiff enjoyed a reasonable expectation of privacy, the desk search was neither reasonable at its inception nor reasonable in scope under the circumstances she alleges. Again, the Court cannot grant immunity to defendants simply because they deny plaintiff's allegations. Therefore, because plaintiff avers violation of a clearly established right of which a reasonable person would have known, qualified immunity does not attach to defendants for the search of plaintiff's office.

Defendants next contend that the CSRA precludes plaintiff's Fourth Amendment claim because it defines the exclusive remedy for adverse personnel decisions. The CSRA denies plaintiff a remedy for her nonconstitutional claim as well as her constitutional claim. Thus, the question becomes whether this Court can create a remedy for a warrantless search of a government employee's office when Congress has acted generally to regulate public employees' rights, but has provided no remedy for this possible constitutional violation.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court held that a federal court has the power to provide a remedy for a Fourth Amendment claim against a federal employee individually. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Later, in *Bush*, the Court warned that courts should refrain from using this power when "special factors" counseling hesitation are present. 462 U.S. 367, 103 S.Ct. at 2404. In *Bush*, the "special factor" counseling judicial abstention was the CSRA. The Court found that where Congress had acted to regulate civil service employment actions, and had provided meaningful remedies for constitutional violations, courts should defer to Congress's judgment and refrain from creating new remedies. The Court left unclear whether the CSRA demanded such abstension when it denied a constitutional remedy for a specific individual.

Recent decisions, however, indicate that the CSRA does, as defendants claim, preclude *Bivens*-type actions even for injuries for which the CSRA denies relief. *See Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *Spagnola*, 859 F.2d at 223; *Kotarski v. Cooper*, 799 F.2d 1342 (9th Cir.1986), *vacated & remanded* in light of *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (*see* decision on remand, 866 F.2d 311 (9th Cir.1989)). These decisions suggest that the remedial system provides a meaningful remedy to civil service employees, regardless of whether it affords a remedy to a particular individual. Therefore, courts should defer to Congressional determination, within a statutory scheme such as the CSRA, to deny constitutional remedies.

Thus, the CSRA might preclude plaintiff's *Bivens* claim, had not the Supreme Court noted in *Bush* that a warrantless search directed at an employee is not an "adverse action" covered by the statutory scheme. 462 U.S. at 385 n. 28, 103 S.Ct. at 2415 n. 28. Because the CSRA does not include such searches, it is not a "special factor" counseling against a *Bivens*-type action.[1]

Finally, defendants claim that plaintiff's Fourth Amendment claim does not meet the "heightened pleadings standard" re-

---

**1.** At least one other court has similarly found that a warrantless search of a government employee's desk falls outside the ambit of the CSRA. *See Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1339 (9th Cir.1987).

quired in *Bivens* actions. *Martin v. Malhoyt*, 830 F.2d 237, 253 (D.C.Cir.), *reh'g denied*, 833 F.2d 1049 (D.C.Cir.1987). We find this argument unpersuasive. In *Malhoyt*, the court noted that parties must plead a *Bivens* claim with particularity. The plaintiff in that case alleged a pattern of police behavior, but provided no facts to indicate such a pattern. Thus, she did not plead her claim with sufficient specificity. In this case, plaintiff specifically alleges that defendants violated her Fourth Amendment rights, specifying how and when they violated those rights. Her complaint meets the heightened pleading standard set out in *Malhoyt*. Accordingly, defendants' motion to dismiss the portion of Count 5 addressing the office search is denied.

### COUNTS 6 & 7

■ Plaintiff's common law tort claims against defendant Greer, which include intentional infliction of emotional distress and interference with a business relationship, fall within the Federal Employees Liability Reform and Tort Compensation Act of 1988, (FELRTCA), Public Law 100–694. This amendment to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, is designed to protect government employees from personal liability for common law torts committed within the scope of their employment. FELRTCA § 2(b). The amendment requires that the Court substitute the United States as defendant for Counts 6 and 7, and then dismiss the defendant United States for plaintiff's failure to exhaust administrative remedies on these tort claims.

Section 6 of the FELRTCA provides that when a federal employee is sued for a common law tort, upon certification by the Attorney General that the employee acted within the scope of his employment, the United States shall be substituted as the party defendant. 28 U.S.C. § 2679(d)(1). This remedy against the United States is exclusive, and all claims against the individual based on that subject matter are non-actionable. 28 U.S.C. § 2679(b)(1). The case then proceeds in accordance with FTCA rules as if it had originally been filed against the United States. 28 U.S.C. § 2679(d)(2). The FELRTCA applies to "all claims, civil actions and proceedings pending on, or filed on or after the date of enactment of this Act." FELRTCA § 8(b).

The Attorney General has certified that defendant Greer acted within the scope of his employment at all times relevant to the complaint. Thus, because this suit was pending when the FELRTCA was enacted on November 18, 1988, the Court must substitute the United States as defendant for Counts 6 and 7.

Under 28 U.S.C. § 2401(b), all tort claims against the United States must be presented to the appropriate federal agency within two years after the claim accrues. Here, no such claim has been filed. Section 6 of the FELRTCA deals specifically with cases such as this in which the government is substituted as defendant and no claim against the United States has been previously filed with the appropriate administrative agency. 28 U.S.C. § 2679(d)(5). Under that section, this claim must be dismissed. Once this order is entered, plaintiffs will have 60 days in which to file a claim with the Department of Education. If the Court were to allow plaintiff to maintain her case against the United States in this Court, future plaintiffs could simply file an action incorrectly against the offending individual. They could then wait for the Court to substitute the United States as defendant, and then proceed against the United States in this Court, effectively bypassing the administrative proceedings required by the FTCA. Therefore, in accord with the FELRTCA, Counts 6 and 7 are dismissed.

An appropriate Order accompanies this Opinion.

SO ORDERED.

### ORDER

Upon consideration of defendants' motion to dismiss or in the alternative for partial summary judgment, plaintiff's opposition thereto, and the entire record herein, for the reasons set forth in the accompanying Opinion, it hereby is

ORDERED, that Count 1 is dismissed. It hereby further is

ORDERED, that defendants' motion for summary judgment is granted as to Count 3. It hereby further is

ORDERED, that summary judgment is granted as to the portion of Count 4 addressing the December 17 letter. Defendants' motion as to the remainder of Count 4 is denied. It hereby further is

ORDERED, that the portions of Count 5 addressing delivery of plaintiff's termination and restriction of her access to the Department of Education building are dismissed. Defendants' motion as to the remainder of Count 5 is denied. It hereby further is

ORDERED, that the United States is substituted as party defendant in place of defendant Greer for Counts 6 and 7, and Counts 6 and 7 are dismissed. Plaintiff shall have 60 days from the date of this Order in which to file a complaint with the Department of Education.

SO ORDERED.