Thomas S. TAYDUS, Plaintiff,

v.

Henry CISNEROS, Secretary of the United States Department of Housing and Urban Development, Defendant.

Civ. A. No. 94–10326–RCL.

United States District Court, D. Massachusetts.

Aug. 25, 1995.

---

LINDSAY, District Judge.

Report and Recommendation accepted.

**ORDER RE: PLAINTIFF'S MOTION FOR SANCTIONS FOR WITHHOLDING DOCUMENTS IN DISCOVERY (DOCKET ENTRY # 50)**

**REPORT AND RECOMMENDATION RE: DEFENDANT'S AMENDED MOTION TO DISMISS *(DOCKET ENTRY ## 7 & 41)***

August 25, 1995

BOWLER, United States Magistrate Judge.

Plaintiff Thomas S. Taydus ("plaintiff") moves for sanctions against defendant Henry Cisneros ("defendant"), Secretary of the United States Department of Housing and Urban Development, for withholding various documents during discovery. (Docket Entry # 50). After conducting a hearing on August 2, 1995, this court took the motion for sanctions (Docket Entry # 50) under advisement. (Docket Entry # 62).

Also pending before this court is defendant's amended motion to dismiss (Docket Entry ## 7 & 41) which plaintiff opposes (Docket Entry # 61). This opinion initially addresses the amended motion to dismiss, including the procedural posture of the case, before turning to the motion for sanctions.

## I. *DEFENDANT'S AMENDED MOTION TO DISMISS (DOCKET ENTRY ## 7 & 41)*

On May 9, 1995, this court issued a Report and Recommendation with respect to defendant's motion to dismiss (Docket Entry # 7). (Docket Entry # 39). The Report and Recommendation recommended dismissal of: (1) The Veterans Readjustment Act ("VRA"), 38 U.S.C. § 4214, claim in Count I; (2) The Veterans Preference Act ("VPA"), 5 U.S.C. § 2108, claim in Count II; and (3) the public policy claim in Count VII. This court further permitted plaintiff to bring the claims in Count I and II which are based on section 791 of the Rehabilitation Act ("the Rehabilitation Act"), 29 U.S.C. §§ 701 *et seq.*, in Count IV, a count which pertains to The Rehabilitation Act. (Docket Entry # 39, n. 4

Norma Roth, Jackman & Roth, Boston, MA, for Plaintiff.

Susan M. Poswistilo, United States Attorney's Office, Boston, MA, for Defendant.

& p. 20). Accordingly, this court recommended dismissal of counts I, II and IV.

This court reasoned that plaintiff had a cause of action under The Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* ("APA"), albeit subject to the limited relief afforded under the statute. (Docket Entry # 39, pp. 10–12). In light of the APA cause of action brought in Count III, this court declined to imply a private right under the VPA, the VRA or public policy. (Docket Entry # 39, pp. 12–14). Hence, this court found it unnecessary to address defendant's argument that the comprehensive nature of the Civil Service Reform Act ("CSRA"), codified in various sections of Title 5 of the United States Code, precluded judicial review of the VPA, the VRA and the public policy claims in counts I, II and IV (Docket Entry # 7, pp. 6–9). In so finding, this court construed defendant's motion to dismiss and supporting papers as not seeking to dismiss the APA count on the basis that the CSRA precluded judicial review of the APA claim. (Docket Entry # 39, n. 6 & 11).

The district judge accepted the recommendation over defendant's objections.[1] Defendant objected to this court's recommendation, in part, on the basis of this court's conclusion that defendant's motion to dismiss did not seek to dismiss the APA claim in Count III due to the CSRA's preclusive effect. In addition to filing objections to the Report and Recommendation, defendant filed a motion to amend the motion to dismiss to raise the argument that the CSRA precludes judicial review of the APA claim for reasons stated in the objections to the Report and Recommendation. (Docket Entry # 41). The district judge allowed the motion to amend the motion to dismiss and referred the amended motion to dismiss to this court for a recommendation.

The issue of the preclusive effect of the CSRA, particularly as it applies to plaintiff's APA claim, is therefore ripe for review. This court's previous summary of the facts in the verified complaint applies to the amended motion to dismiss and therefore need not be repeated at length.

Plaintiff, a 40% service connected, disabled Vietnam veteran, applied for one of 11 advertised temporary positions for management information specialists in a regional office of the United States Department of Housing and Urban Development ("HUD").

HUD rejected plaintiff's application, in part, because he had not taken the Administrative Careers with America Examination ("the ACWA exam"). Regulations promulgated under 5 U.S.C. § 3112, however, allow HUD officials to waive the ACWA exam for preference eligible veterans with a service connected disability or veterans of the Vietnam era such as plaintiff. 5 C.F.R. § 316.402(b)(4) & (5). Plaintiff advised a HUD official about the relevant regulations allowing for the noncompetitive appointment of preference eligible disabled veterans such as plaintiff. Notwithstanding this advice, the HUD official continued to insist that plaintiff take the ACWA exam.

Plaintiff therefore complied with HUD's mandate and took the ACWA exam. After passing the exam, plaintiff applied for another position at HUD. Again, despite his qualifications and veterans status, defendant awarded the position to another candidate.

■ Plaintiff's APA claim revolves around HUD's requirement that plaintiff take the ACWA exam. Plaintiff contends that defendant improperly required plaintiff to take the ACWA exam despite regulations allowing a waiver for preference eligible, service connected, disabled veterans and Vietnam era veterans. Moreover, after being advised of the pertinent regulations, defendant purportedly failed to correct its misapplication of the regulations at issue. As previously determined, an agency's failure to consider applicable regulations and its failure to consider plaintiff's eligibility for a waiver of the ACWA exam in light of his status as a disabled or Vietnam era veteran is reviewable under the APA.

---

1. Defendant did not object to this court allowing plaintiff to bring The Rehabilitation Act claims alleged in counts I and II in Count IV.

## DISCUSSION

"The CSRA was meant to provide a comprehensive framework for personnel policies governing federal employees." *Roth v. United States,* 952 F.2d 611, 614 (1st Cir.1991); *accord Montplaisir v. Leighton,* 875 F.2d 1, 2 (1st Cir.1989) (noting that CSRA formed part of "legislation which 'comprehensively overhauled' the federal civil service"). Prior to the 1978 enactment of the CSRA, the civil service system consisted of an " 'outdated patchwork of statutes and rules built up over almost a century.' " *United States v. Fausto,* 484 U.S. 439, 444, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988). A leading purpose of the CSRA was to replace this patchwork system "with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto,* 484 U.S. at 445, 108 S.Ct. at 672. The resulting statute consists of " 'an elaborate remedial scheme ... constructed step by step, with careful attention to conflicting policy decisions.' " *Montplaisir v. Leighton,* 875 F.2d at 2 (quoting *Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 2417, 76 L.Ed.2d 648 (1983)). It is also worth recognizing that the management of federal personnel is "an area peculiarly within the ken and concern of Congress." *Harrison v. Bowen,* 815 F.2d 1505, 1515 (D.C.Cir. 1987) (also stating that interpolating remedies Congress did not provide only leads to error).

The Supreme Court therefore jealously guards the CSRA from "inconcinnous judicial incursions" into the statute's carefully constructed remedial scheme. *Montplaisir v. Leighton,* 875 F.2d at 3 (citing *Fausto* and *Bush* ). Numerous circuit courts follow this guidance and find that the CSRA bars a wide array of claims and, indeed, even precludes *Bivens*-type constitutional claims in certain circumstances.[2] *See, e.g., Robbins v. Bentsen,* 41 F.3d 1195, 1202–1203 (7th Cir.1994) (CSRA, which provides claimant opportunity to file complaint with Office of Special Counsel, precludes *Bivens* action); *Steele v. United States,* 19 F.3d 531, 532–533 (10th Cir. 1994) (CSRA prohibits former federal employee's claims for wrongful termination, breach of covenant of good faith and fair dealing, and intentional and reckless infliction of emotional distress); *Jones v. Tennessee Valley Authority,* 948 F.2d 258, 264 (6th Cir.1991) (CSRA precludes *Bivens* action for preference eligible veteran); *Volk v. Hobson,* 866 F.2d 1398, 1401 (Fed.Cir.), *cert. denied,* 490 U.S. 1092, 109 S.Ct. 2435, 104 L.Ed.2d 991 (1989) (CSRA bars implied private right of action for nonpreference eligible, excepted service employee); *Spagnola v. Mathis,* 859 F.2d 223, 228–230 (D.C.Cir.1988) (CSRA precludes federal employment applicant from bringing *Bivens* action for conduct alleging prohibited personnel practice); *Schrachta v. Curtis,* 752 F.2d 1257, 1260 (7th Cir.1985) (exhaustive and complex remedial scheme of CSRA prevents implying private right of action); *Bolivar v. Director of the FBI,* 846 F.Supp. 163, 168–169 (D.P.R.1994), *aff'd,* 45 F.3d 423 (1st Cir.1995) (CSRA precludes *Bivens* and state law claims challenging federal personnel actions); *see also Morales v. Ramirez,* 906 F.2d 784, 786 (1st Cir.1990) (recognizing comprehensive and integrated nature of CSRA but declining to address whether statutory scheme bars *Bivens* suit).

Claims under the APA, which expressly excludes judicial review where provided for under another statute, 5 U.S.C. § 701(a)(1), fare no better under the CSRA. *See, e.g., McAuliffe v. Rice,* 966 F.2d 979, 980–981 (5th Cir.1992) (CSRA precludes APA claim despite greater remedies afforded under APA); *Stephens v. Department of Health and Human Services,* 901 F.2d 1571, 1575–1576 (11th Cir.), *cert. denied,* 498 U.S. 998, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990) (CSRA bars APA claim challenging agency's application of veterans preference statutes for conduct amounting to prohibited personnel practice); *Ryon v. O'Neill,* 894 F.2d 199, 201–204 (6th Cir.1990) (CSRA prevents review of agency reassignment claim based on implied private right of action under CSRA and

---

**2.** In *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court found a cause of action under the Fourth Amendment for injuries inflicted by the conduct of federal officials despite the absence of an express statutory cause of action.

APA); *Harrison v. Bowen,* 815 F.2d 1505, 1516 (D.C.Cir.1987) (nonpreference eligible excepted service employee lacks implied right of action under CSRA and judicial review under APA); *Pinar v. Dole,* 747 F.2d 899, 912–913 (4th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985) (statutory scheme of CSRA reveals Congressional intent to foreclose judicial review of APA claim alleging minor, disciplinary personnel action); *Veit v. Heckler,* 746 F.2d 508, 510–511 (9th Cir.1984) (comprehensive nature of CSRA shows Congressional intent to preclude judicial review thereby barring implied right of action under APA for nonmajor personnel action); *McGregor v. Greer,* 748 F.Supp. 881, 884 (D.D.C.1990) ("CSRA creates intricate scheme of remedies," defines the plaintiff's rights "regardless of her lack of remedies," and precludes review of APA claim); *McGregor v. Greer,* 748 F.Supp. 881, 884 (D.D.C.1990) (CSRA precludes APA claim despite absence of remedy).[3]

■ The CSRA provides preference eligible[4] veterans such as plaintiff with certain limited rights. The procedure afforded under the CSRA hinges on the nature of the conduct involved. In particular, the level of judicial review depends on whether the conduct involved constitutes an adverse action or a "prohibited personnel practice" as defined in 5 U.S.C. § 2302. *Ryon v. O'Neill,* 894 F.2d at 203. Preference eligible individuals alleging a prohibited personnel practice, with few exceptions, may not appeal directly to the Merit Systems Protection Board ("MSPB") but may petition the Office of Special Counsel ("OSC").[5] *Ryon v. O'Neill,* 894 F.2d at 203. The CSRA obligates the OSC to receive and investigate any allegation of a prohibited personnel practice. 5 U.S.C. § 1214(a)(1)(A).

■ The fact that plaintiff is an applicant for federal employment rather than a federal employee does not place the alleged wrongdoing outside the scope of the CSRA. The CSRA broadly defines "personnel action" to include "an appointment," 5 U.S.C. § 2302(a)(2)(A)(i), which thereby encompasses job applicants for federal employment in

**3.** In February 1984 in *Dugan v. Ramsay,* 727 F.2d 192 (1st Cir.1984), the First Circuit found that the CSRA did not bar review of an APA claim of a disappointed applicant for the position of an administrative law judge. *Dugan,* however, did not cite to the June 1983 *Bush* decision and predated the Supreme Court's *Fausto* decision. It is undeniable that the Supreme Court's decision in *Fausto* "streamlined and simplified" the scope of remedies available to federal personnel. *McAuliffe v. Rice,* 966 F.2d 979, 979 (5th Cir.1992). The First Circuit has neither cited to nor relied on *Dugan* with respect to the issue of the CSRA's preclusive effect since issuance of the opinion. Because more recent First Circuit decisions afford far greater deference to the exhaustive and comprehensive nature of the remedial scheme embodied in the CSRA, *Roth v. United States,* 952 F.2d 611, 614 (1st Cir.1991); *Berrios v. Department of the Army,* 884 F.2d 28, 30–31 (1st Cir.1989) (citing *Bush* and *Fausto* to conclude that CSRA preempted state law claims); *Montplaisir v. Leighton,* 875 F.2d 1, 2–3 (1st Cir.1989); *see also Morales v. Ramirez,* 906 F.2d 784, 786 (1st Cir.1990) (recognizing comprehensive and integrated nature of CSRA), this court finds that these decisions, taken together with the Supreme Court's 1988 decision in *Fausto,* evince a strong predilection that the First Circuit would not find a cause of action under the APA if faced with the issue today.

**4.** The term "preference eligible" includes service connected, disabled veterans. 5 U.S.C. § 2108.

The CSRA affords more extensive rights, including appeal rights, *Noble v. Tennessee Valley Authority,* 892 F.2d 1013, 1016 (Fed.Cir.1989), *cert. denied,* 496 U.S. 936, 110 S.Ct. 3214, 110 L.Ed.2d 662 (1990) (listing appeal rights for preference eligible employees), to preference eligible and competitive federal employees than to excepted and probationary federal employees. *Harrison v. Bowen,* 815 F.2d 1505, 1510 (D.C.Cir.1987); *see also United States v. Fausto,* 484 U.S. at 449, 108 S.Ct. at 674 (noting "preferred position" given to preference eligible veterans under the CSRA).

**5.** CSRA regulations additionally provide that a candidate who believes that an employment practice as applied to him by the Office of Personnel Management, as opposed to the particular agency, violates the basic requirements of 5 C.F.R. § 300.103 may to appeal to the MSPB. 5 C.F.R. § 300.104(a). The basic requirements defined in 5 C.F.R. § 300.103 include the prohibition that: "An employment practice shall not discriminate on the basis of race, color, religion, sex, age, national origin, partisan political affiliation, or other nonmerit factor." 5 C.F.R. § 300.103(c); *see generally Lackhouse v. MSPB,* 734 F.2d 1471 (Fed.Cir.1984), *appeal after remand, Lackhouse v. MSPB,* 773 F.2d 313 (Fed. Cir.1985), *cert. denied,* 475 U.S. 1049, 106 S.Ct. 1271, 89 L.Ed.2d 580 (1986).

federal agencies such as plaintiff. *See, e.g., Spagnola v. Mathis,* 859 F.2d at 225 n. 3; *Hubbard v. Administrator, E.P.A.,* 809 F.2d 1, 8 n. 10 (D.C.Cir.1986) (rejecting argument that federal job applicant fell outside reach of CSRA in light of inclusion of appointments in definition of personnel action); *Barhorst v. Marsh,* 765 F.Supp. 995, 998 (E.D.Mo.1991) ("CSRA expressly recognizes a remedy for constitutional challenges by job applicants"); *Moncrief v. Office of Personnel Management,* 621 F.Supp. 963, 965–966 (D.D.C.1985), *aff'd,* 811 F.2d 676 (D.C.Cir.1987) (CSRA covers applicants for federal positions). The CSRA affords certain appeal rights to applicants as well as to employees. 5 U.S.C. §§ 7702(a)(1) & 7703(a)(1).

■ Prohibited personnel practices include conduct which, similar to the conduct alleged, "deceive[s] or willfully obstruct[s] any person with respect to such person's right to compete for employment." 5 U.S.C. § 2302(b)(4). Prohibited personnel practices also encompass conduct which, similar to the conduct alleged, discriminates against an "applicant for employment on the basis of conduct which does not adversely affect the performance of the . . . applicant." 5 U.S.C. § 2302(b)(10).

■ Affording more judicial review to prohibited personnel actions than to adverse actions frustrates the exhaustive remedial scheme of the CSRA. *Ryon v. O'Neill,* 894 F.2d at 204; *accord Towers v. Horner,* 791 F.2d 1244, 1246 (5th Cir.1986). Consequently, implied private rights of action to remedy minor personnel actions, whether under the APA, the VRA, the VPA or public policy, are "inconsistent with the complex remedial structure established by Congress" under the CSRA. *Schrachta v. Curtis,* 752 F.2d 1257, 1260 (7th Cir.1985).

Indeed, CSRA's failure to provide for any judicial review of certain types of conduct in such comprehensive legislation generally reflects "a congressional intent that no relief be available." *Carducci v. Regan,* 714 F.2d 171,

174–175 (D.C.Cir.1983) (albeit finding matter committed to agency discretion and therefore outside scope of APA); *see also Roth v. United States,* 952 F.2d at 615 (rejecting lack of remedy argument). In other words, congressional silence with respect to the absence of a remedy or the decision to afford only a limited remedy to plaintiff under the CSRA is not inadvertent in light of the scope and the comprehensive nature of the statute. *See Jones v. Tennessee Valley Authority,* 948 F.2d at 264.

This court therefore finds that the CSRA precludes plaintiff's APA claim.[6]

## II. PLAINTIFF'S MOTION FOR SANCTIONS FOR WITHHOLDING DOCUMENTS IN DISCOVERY (DOCKET ENTRY # 50)

Plaintiff moves for sanctions under Rule 37(b)(2), Fed.R.Civ.P. ("Rule 37(b)(2)"), due to defendant's alleged failure to produce certain documents.[7] (Docket Entry ## 50 & 56, p. 22). Plaintiff asserts that defendant, through Robert J. Petrola ("Petrola"), Director of the Human Resource Division for the New England Region of HUD, withheld, hid and destroyed essential documents relevant to this litigation.

Plaintiff filed this action on February 17, 1994. Discovery closed on January 31, 1995. The present discovery dispute centers around plaintiff's attempts to obtain: (1) the vacancy announcement and the job analysis with respect to the 11 temporary employment positions for management information specialists advertised by HUD in July 1991 ("the July positions"); and (2) the documentation concerning the qualifications and appointment of other candidates for the July positions and/or the position plaintiff interviewed for in August 1991 ("the August position"). The asserted basis for imposing sanctions is defendant's violation of the automatic disclosure requirements embodied in Rule 26(a), Fed.R.Civ.P. ("Rule 26(a)"), and Petro-

---

6. The CSRA also precludes review of plaintiff's VRA, VPA and public policy claims.

7. Plaintiff expressly requests issuance of an order assessing penalties under "Rule 37(b)(2)(A), (B) and (C)." (Docket Entry # 56, p. 22). He also refers to "Rule 37(4)(c)" (Docket Entry # 56, p. 13), a rule which does not exist in the Federal Rules of Civil Procedure.

la's alleged destruction of relevant documents.

### 1. *Vacancy Announcement and Job Analysis*

Plaintiff requested the vacancy announcement and the job analysis at Petrola's February 1995 deposition, after the close of discovery. At the deposition, Petrola testified that he prepares vacancy announcements for HUD positions only for internal HUD applicants. He also stated that an internal vacancy announcement was prepared. (Docket Entry # 53, Ex. C).

Petrola additionally testified that HUD generally maintains case files for recruitment positions for a two year period or for audits conducted by the Office of Personnel Management, whichever comes first. Accordingly, HUD would have destroyed any case file pertaining to plaintiff no later than July or August 1993. Such case files ordinarily include any vacancy announcement, job analysis, crediting plan and other documents concerning the recruitment process. (Docket Entry # 53, Ex. C).

Petrola, however, stated that he had certain materials for this case in files in his office. Petrola's search of his records, however, failed to uncover the vacancy announcement or the job analysis. In fact, according to Petrola, there never was a vacancy announcement for the July and August positions. In addition, after contacting one or more individuals at "HUD's headquarters personnel office," Petrola was unable to locate a job analysis because ordinarily HUD only retains such an analysis for a two year period. (Docket Entry # 53, Ex. D).

■ Plaintiff argues, in part, that defendant failed to produce the relevant documents in response to plaintiff's September 1991 request under the Freedom of Information Act, 5 U.S.C. § 552, ("the FOIA request") and in connection with his October 1991 administrative charge of handicap and age discrimination filed with the Equal Employment Opportunity Commission ("the EEOC").[8] (Docket Entry # 56). Any attempt to obtain information pursuant to the

FOIA request does not constitute a document request for purposes of this action. Although the adequacy of Petrola's response to the FOIA request and his conduct during the EEOC investigation may be relevant to the issue of a discriminatory animus, it does not establish a failure on the part of defendant to produce a document in this action for purposes of imposing sanctions.

■ As previously noted, plaintiff also seeks sanctions due to defendant's alleged noncompliance with the automatic disclosure requirements prescribed in Rule 26(a). At the time plaintiff commenced this action in February 1994, however, it is more than likely that HUD had destroyed any vacancy announcement or job analysis. Petrola also avers that there never was a vacancy announcement for the positions at issue. (Docket Entry # 53, Ex. D). Consequently, in February 1994 defendant did not have the vacancy announcement or the job analysis in his "possession, custody, or control" within the meaning of Rule 26(a)(1)(B) and, hence, did not violate the automatic disclosure requirements of the rule. Similarly, defendant did not have the vacancy announcement or the job analysis in his "possession, custody, or control" within the meaning of Rule 34(a), Fed.R.Civ.P. ("Rule 34"). *See Haseotes v. Abacab International Computers, Inc.*, 120 F.R.D. 12, 15 (D.Mass.1988) (discussing meaning of possession, custody, or control); *see also United States v. Intern. Union of Petroleum & Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir.1989) (party seeking production of documents bears burden of proving control).

Therefore, plaintiff is not entitled to an award of sanctions under Rule 37(b)(2), which prescribes violations of court orders. *See R.W. International Corporation v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir.1991). Assuming for purposes of argument that plaintiff seeks relief under Rule 37(c), Fed.R.Civ.P. ("Rule 37(c)"), plaintiff is not entitled to an award of sanctions given the insufficient evidence that defendant violated Rule 26(a), Fed.R.Civ.P. Similarly, assuming arguendo that plaintiff requests sanctions un-

---

8. Plaintiff received a final agency decision in

December 1993. (Docket Entry # 1, ¶ 3).

der Rule 37(d), Fed.R.Civ.P., *see generally Marx v. Kelly, Hart & Hallman, P.C.,* 929 F.2d 8, 10–11 (1st Cir.1991) (briefly discussing interplay of Rules 34 and 37(d)), plaintiff is not entitled to relief in light of the absence of documents in the "possession, custody, or control" of defendant within the meaning of Rule 34(a).

 Finally, in the event Petrola hid or destroyed the case file, and, in particular, any vacancy announcement, job analysis and job applications therein, the trial judge may allow the jury to draw an adverse inference from Petrola's destruction of relevant documentation. *See Nation-Wide Check Corporation v. Forest Hills Distributors, Inc.,* 692 F.2d 214, 217–218 (1st Cir.1982). Such a determination, however, is best reserved for the trial judge in his discretion. This court, therefore, expresses no opinion on plaintiff's entitlement to receive an adverse inference.

### 2. *Documentation vis-a-vis other candidates*

Plaintiff also asserts that the missing documentation includes: (1) dates of offers and acceptances defendant made to other job applicants; (2) information about the qualifications of the individuals who received job offers; and (3) evidence of other jobs in existence after plaintiff passed the ACWA exam. Plaintiff requests sanctions based on defendant's alleged violation of Rule 26(a) and destruction of relevant documents.

 With respect to the first category of documents, plaintiff's first set of interrogatories requested the dates of any such offers and acceptances. In January 1995 defendant identified Lisa Jones as a person offered a position with an effective date of employment of September 8, 1991. Defendant otherwise responded to the interrogatory, however, by stating that HUD had no records of any offers or acceptances. (Docket Entry # 53, Ex. E). In other words, HUD had no documents with respect to the first category of requested material. Therefore, defendant did not have any "documents, data compila-

tions and tangible things" in his "possession, custody, or control" within the meaning of Rule 26(A)(1)(B), and, thus, did not violate the automatic disclosure requirements of the rule.

With regard to the second and third categories of documents, Petrola admittedly testified that he kept certain materials with respect to this case in files in his office. Plaintiff therefore requested a copy of these materials at Petrola's February 1995 deposition. (Docket Entry # 53, Ex. C). Defendant represents that he provided plaintiff with all relevant and available documents which HUD used to compare the candidacies of the applicants for the July and August positions. (Docket Entry # 53).

In March 1995 defendant's counsel advised plaintiff's counsel by letter that she had reviewed the case materials referred to by Petrola at his deposition. After listing the ten items in the case materials, defendant's counsel pointed out that plaintiff already had possession of six of the items. Defendant produced the remaining items except for the item pertaining to job applications and paperwork related to unsuccessful candidates and candidates who declined an offered position. (Docket Entry # 56, Ex. 2). Defendant submits that such information is private and confidential. (Docket Entry # 53).

With respect to defendant's alleged violation of Rule 26(a), the rule requires disclosure of those documents in the "possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings."[9] Rule 26(a)(1)(B), Fed.R.Civ.P. The limitation of the disclosure obligation to those documents relevant to facts " 'alleged with particularity' reduces the burden on the nonpleading party." 4 James William Moore *Moore's Federal Practice* ¶ 26.04[4] (1995). Nevertheless, the "greater the specificity and clarity of the allegations in the pleadings, the more complete should be the listing of ... types of documentary evidence." Advisory Committee Notes, Rule 26(a)(1), 1993 Amendment. The Advisory Committee Notes characterize

---

9. Local Rule 26.2 directs parties to disclose the "materials called for in Fed.R.Civ.P. 26(a)(1)." LR. 26.2.

subparagraph (B) "as a substitute for the inquiries routinely made about the existence and location of documents." Advisory Committee Notes, Rule 26(a)(1), 1993 Amendment.

Turning to the ten items contained in the nondisclosed materials referred to by Petrola at his deposition, item (a), a generic recruitment letter, lies outside the reach of Rule 26(a)(1)(B), Fed.R.Civ.P. Defendant's counsel states that it produced items (b), (c), (e), (h) and (j) as exhibits to the "ROI," which this court assumes refers to the Report of Investigation. (Docket Entry # 56, Ex. 2). Defendant's initial disclosure letter pursuant to Rule 26(a) and LR. 26.2 notes production of "the two volume Report of Investigation." (Docket Entry # 56, Ex. 5). Defendant therefore complied with Rule 26(a)(1)(B) with respect to the aforementioned items.

Defendant did not disclose items (d), (f) and (k) in the initial disclosure letter but, according to the March 1995 letter, will or has produced the documents at the present time. Item (d) is a handwritten note attached to a rejection letter of an unsuccessful candidate. Item (f) is an incomplete standard form used for applicants in applying to agencies. Item (k) is an incomplete standard form application completed before the July 1991 application process began. Such documents appear marginally relevant to the case at bar and are not the type of documents routinely requested in light of the facts alleged with particularity in the complaint. Items (d), (f) and (k) therefore fall outside the reach of Rule 26(a)(1)(B).

The only remaining nondisclosed item is item (g) which pertains to information concerning job applications of unsuccessful candidates and candidates who declined offered positions. Admittedly, defendant did not produce this information in the initial disclosure letter and continues to refuse to produce this information. Despite defendant's allegations to the contrary, such information is relevant to allegations alleged with particularity in paragraphs 39 through 41 and 43 in

the complaint. (Docket Entry # 1, ¶¶ 39–41 & 43).

Further, although defendant asserts that the information is privileged and confidential, Rule 26(b)(5) explicitly states that:

> When a party withholds information otherwise discoverable under these rules by claiming it is privileged . . ., the party shall make the claim expressly and shall describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the applicability of the privilege.

Rule 26(b)(5), Fed.R.Civ.P. Rule 26(b)(5) therefore mandates that, in the event a party withholds privileged documents from its automatic disclosure required under Rule 26(a)(1)(B), the party should at least claim the privilege and briefly describe the withheld documents. A party who withholds privileged documents that lie within the scope of Rule 26(a)(1)(B) without providing a brief description of the documents is subject to sanctions under Rule 37(c).

Defendant's automatic disclosure letter fails to describe any documents concerning job applications of unsuccessful candidates and candidates who declined offered positions. Nor does defendant claim any privilege with respect to such documents. With regard to item (g), therefore, defendant is in violation of the automatic discovery obligations prescribed by Rule 26(a). Plaintiff seeks "monetary sanctions" for defendant's violation of Rule 26(a).

Absent "substantial justification" for the nondisclosure, Rule 37(c) allows this court to impose the sanctions listed in Rule 37(b)(2)(A), (B) and (C), for a party's failure to disclose information required under Rule 26(a). Rule 37(c)(1), Fed.R.Civ.P. In addition, this court may require defendant to pay the reasonable expenses, including attorney's fees, caused by defendant's failure to comply with the disclosure requirements of Rule 26(a)(1)(B).[10] Rule 37(c)(1), Fed.R.Civ.P.

---

10. To the extent Rule 37(c) gives this court the authority to preclude the use of the nondisclosed evidence at trial, this court declines to issue such an order at this time. Such a matter is properly reserved for the trial judge. Moreover, plaintiff expressly requests monetary sanctions rather

Defendant is therefore ordered to show cause as to why this court should not impose sanctions under Rule 37(c)(1) for defendant's failure to comply with the automatic discovery provisions in Rule 26(a)(1)(B) with respect to the job applications of unsuccessful candidates and candidates who declined offered positions.

### CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS** [11] that defendant's amended motion to dismiss (Docket Entry ## 7 & 41) be **ALLOWED** and that Count III be dismissed. Plaintiff's motion for sanctions (Docket Entry # 50) is **ALLOWED** to the extent that defendant is ordered to show cause on or before September 1, 1995, as to why sanctions should not be imposed for defendant's noncompliance with the automatic discovery provisions of Rule 26(a) with regard to its nondisclosure of the job applications of unsuccessful candidates and candidates who declined offered positions. Plaintiff's motion for sanctions (Docket Entry # 50) is otherwise **DENIED** except to the extent that the issue of whether to draw an adverse inference from any destruction of relevant documentation is reserved for the trial judge in his discretion.

This court shall conduct a hearing on plaintiff's motion to compel (Docket Entry # 57) and defendant's motion to strike (Docket Entry # 65) on September 8, 1995, at 10 a.m. The parties will receive no further notice of the hearing.

than preclusion with regard to defendant's Rule 26(a) violation. Insofar as plaintiff seeks the sanction of an adverse inference due to Petrola's alleged destruction of the documentation concerning other job applicants, this issue is best resolved by the trial judge. Finally, rendering a default judgment under Rule 37(b)(2)(D), is inappropriate particularly in light of the lack of magnitude of the violation.

11. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986).